UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER ZINSKI,

        Plaintiff,

vs.

Civil Action No. 18-CV-13860

HON. BERNARD A. FRIEDMAN

DAVID REXFORD,
NATHAN CALLOW, and
OFFICER EAGAN,

        Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendants' motion for summary judgment [docket entry 24]. Plaintiff has not responded, and the time for him to do so has expired.[1] Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion.

This is a police misconduct case. Plaintiff alleges that shortly after midnight on December 15, 2015, he was driving through Warren, Michigan, when defendants Rexford and Callow, City of Warren police officers, stopped him because his tail lights were out. Compl. ¶¶ 7-14. Callow asked for plaintiff's driver's license; plaintiff placed his license against the window but refused Callow's request to hand him the license. *Id.* ¶¶ 17-19. Callow also asked

_____

[1] Defendants' motion was filed on February 14, 2020, and the Court ordered plaintiff to respond by March 16. On March 11, plaintiff filed a motion requesting a thirty-day extension on the grounds that he "need[ed] additional time to review the motion and the record and to research and prepare a response." Pl.'s Mot. to Extend Time ¶ 5. The Court granted plaintiff's motion and extended the response deadline by forth-five days until May 1. As of the date of this opinion, plaintiff has neither responded nor requested a further extension of the response deadline.

for plaintiff's registration and proof of insurance.  *Id.* ¶ 20.  "As Plaintiff looked for the documents, Officer Rexford stated, 'I see a butt.'" *Id.* ¶ 21.  "Rexford drew his gun and aimed it towards Plaintiff," and both officers ordered plaintiff to get out of his car.  *Id.* ¶¶ 22, 26. Plaintiff alleges he "told the officers that he feared for his life and asked them to call their supervisor." *Id.* ¶ 27.  Callow and Rexford "then smashed the driver's side window" and, with the assistance of defendant Eagan, another Warren police officer who had arrived at the scene, "forcibly removed Plaintiff from his vehicle." *Id.* ¶¶ 28-30.  Defendants "threw Plaintiff to the ground by force, and wrestled and beat Plaintiff as he yelled out in pain."  *Id.* ¶ 31.

Defendants transported plaintiff to the Warren police department for booking. *Id.* ¶ 32.  When plaintiff told defendants that his arm was injured, they "threatened Plaintiff that if he asked them to call for EMS, they would charge him for falsely summoning an ambulance." *Id.* ¶¶ 33-34.  Plaintiff "requested an ambulance and was examined at the jail."  *Id.* ¶ 35. Defendants then "falsely and maliciously charged Plaintiff with falsely summoning an ambulance, and Plaintiff was later arraigned on that charge."  *Id.* ¶ 36.  "After being released on bond, Plaintiff was examined by a doctor in the emergency room, confirming he had suffered two fractures of the upper humerus of his left arm." *Id.* ¶ 37.  "The charge of falsely summoning an ambulance was dropped," but plaintiff was convicted of "obstructing by disguise and disobeying a lawful command." *Id.* ¶¶ 39-40.

Plaintiff claims that defendants used excessive force while arresting him, in violation of his Fourth Amendment rights (Count I), and that they "falsely charged Plaintiff with falsely summoning an ambulance" (Count II).  He seeks damages, costs, interest, and attorney fees.

Defendants seek summary judgment on both counts.  Defendants argue that the excessive force claim fails because they used a reasonable amount of force to arrest plaintiff when he refused their lawful orders to produce his license, registration, and proof of insurance, and to step out of his vehicle.  Defendants argue that the "false charge" claim fails because they had probable cause to charge him with this crime.  Defendants' motion is brought under Fed. R. Civ. P. 56.

> Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In applying the summary judgment standard, the court must review all materials supplied, including pleadings, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the evidence is merely colorable or is not significantly probative, then a court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

*United States v. White*, No. 17-6022, 2018 WL 4215614, at *2 (6th Cir. July 11, 2018).

Having reviewed the complaint, defendants' summary judgment motion, and the exhibits attached to defendants' motion, the Court concludes that defendants are entitled to summary judgment on both of plaintiff's claims.

Regarding Count I, "[t]o determine whether the force was excessive [during an arrest or investigatory stop], we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Brown v. Lewis*,

3

779 F.3d 401, 418 (6th Cir. 2015) (citation and internal quotation marks omitted).  This claim

fails in the present case because the force defendants used was objectively reasonable under

the circumstances.  The undisputed evidence shows that plaintiff refused Callow's lawful

command to hand over his license, registration, and proof of insurance, and that he refused

Callow's and Rexford's lawful command to step out of his vehicle or even to unlock it.

Rexford saw what he believed was the butt of a handgun under plaintiff's seat.[2]  Plaintiff

escalated the situation by ignoring the officers when they asked him what this item.  To enforce

compliance with their lawful orders, and to prevent plaintiff from harming them with what they

believed appeared to be a weapon, defendants were well within their rights to break the driver's

window by pulling it outward, as plaintiff had cracked it open.  When plaintiff still refused to

get out of his car, the officers were entitled to use reasonable force to pull him out and place

him on the ground for handcuffing.  Plaintiff still refused to cooperate and brought injury upon

himself by disobeying defendants' repeated command to stop resisting and to allow himself to

be handcuffed.

　　　　This version of events is plainly depicted in the video recordings from

defendants' police cars.  It is also the version described in the affidavits submitted by

defendants Rexford and Callow (Defs.' Exs. 6 and 7), which plaintiff has not challenged and

is therefore deemed to be "undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Moreover, in his deposition testimony plaintiff himself confirmed the material aspects of

---

[2] In his arrest report, Rexford wrote that he "could see what appeared to be the handle
or butt end of a handgun, silver in color under the drivers seat near Zinski's feet. . . . An
inventory search of the vehicle revealed that the item I had observed under the front seat . . .
was a large pipe wrench."  Defs.' Ex. 4 at 4.

defendants' version of this event, e.g., that he refused to hand over the requested documents,

that instead of rolling his window down he rolled it up, that he understood what Rexford meant

when he yelled he saw a "butt," that he refused to get out of his car, that the officers warned

him they would break the window if he did not get out, that he told the officers to "go ahead

and break my window," that after defendants broke his window they asked him again to step

out of his vehicle but plaintiff refused, and that he "passively resisted" being handcuffed.

Zinski Dep. at 66, 68, 71-72, 76-77, 87 (Defs.' Ex. 8).   Under these circumstances, no

reasonable jury could find in plaintiff's favor on his excessive force claim.   The fact that

plaintiff was injured during the scuffle does nothing to change the analysis.   The force

defendants used was appropriate under the circumstances given plaintiff's complete lack of

compliance.[3] Defendants used no weapons and, as the video evidence demonstrates, plaintiff's

allegation that they "beat" him, Compl. ¶ 31, is untrue.

      Plaintiff's claim in Count II (which plaintiff labels "unreasonable prosecutorial

seizure") that defendants falsely charged him with falsely summoning an ambulance is

---

[3] At his sentencing, the state district judge commented,

> You wanted a war.  You wanted to harass the police.  You wanted
> to bother the police.  You wanted to be a problem for the police
> and you got what you brought. . . . And it's a lot more than
> ignorance of the law, it's willful non-compliance with a simple
> order. Show me your information. Everybody who drives knows
> that on a traffic stop your obligation is to share that information.
> You couldn't be bothered.  You wanted a fight, break my window,
> harass me, pull me out of the car, you asked for it and you got it.
> And I'm sorry that your willful non-compliance resulted in you
> receiving an injury but the police have an absolute right to exert
> dominion and control over you when they choose to arrest you.

Defs.' Ex. 19 at 6-7.

presumably meant to be a malicious prosecution claim.  Such a claim has four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.  Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations omitted; alterations in original).

This claim fails because plaintiff cannot establish the second and third elements. While plaintiff alleges that defendants "lacked probable cause to charge Plaintiff for the crime of falsely summoning an ambulance," Compl. ¶ 65, defendants have demonstrated that this charge in fact was supported by probable cause.  Plaintiff alleges that he "requested an ambulance and was examined at the jail." *Id.* ¶ 35.  Plaintiff told defendants that his left arm was hurt, but he told the responding Warren Fire Department personnel that his right arm hurt; they examined him "and found nothing to be wrong with him." Defs.' Ex. 5A (Rexford Arrest Report) at 4.  The fire department log states that plaintiff was assessed and that "no discernible injuries [were] found." Defs.' Ex. 10 at 3.  Plaintiff complained of "minor shoulder discomfort (left)" and "refused further care." *Id.* at 5.  Under these circumstances, defendants had probable cause to believe that plaintiff had falsely requested emergency medical treatment. The fact that plaintiff's arm was in fact broken is irrelevant because probable cause is determined by 'the facts and circumstances within their (the officers') knowledge and of which

they had reasonably trustworthy information." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). The facts and circumstances within defendants' knowledge in this case indicated that plaintiff had no need to request an ambulance because, as the fire department personnel reported, he had "no discernible injuries."

Independently this claim fails because plaintiff does not allege that the filing of this charge caused him to suffer any deprivation of liberty. Plaintiff alleges that he was "arraigned on charges of hindering and obstructing officers and falsely summoning an ambulance," but that the latter charge "was dropped." Compl. ¶¶ 38-39. Plaintiff was convicted "of obstructing by disguise and disobeying a lawful command." *Id.* ¶ 40. On those convictions, plaintiff was fined and sentenced to thirty days in jail. Defs.' Ex. 19 at 8-10. Plaintiff does not allege that the dismissed charge caused him to be deprived of liberty.

For these reasons, the Court concludes that plaintiff's excessive force claim fails because the force used by defendants was objectively reasonable under the circumstances, and that plaintiff's malicious prosecution claim fails because plaintiff cannot establish two of the elements of this tort. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

 

 

s/Bernard A. Friedman
Bernard A. Friedman
Dated: May 13, 2020                    Senior United States District Judge
       Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2020.

Roger Zinski                                    s/Johnetta M. Curry-Williams
P.O. Box 1323                                   Case Manager
Warren, MI 48090